UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA STEEB,

     Plaintiff,

                                  Case No. 1:24-cv-178

v.

                                  Hon. Hala Y. Jarbou

MIKE EHART, et al.,

     Defendants.
_____/

## OPINION

This is a civil rights action under 42 U.S.C. § 1983 and state law brought by Joshua Steeb against the City of Battle Creek, Michigan (the "City"), Battle Creek Police Officer Mike Ehart, Battle Creek Police Chief Jim Blocker, and unnamed senior officers in the City's police department ("John Does #1-5").  Plaintiff agreed to dismiss Defendants Blocker and John Does #1-5.  (Stip. Order of Dismissal, ECF No. 15.)  Before the Court are the remaining Defendants' motions to dismiss the complaint (ECF Nos. 5, 22).  For the reasons herein, the Court will grant the motions and dismiss the action.

## I. BACKGROUND

According to the complaint, on February 22, 2021, Plaintiff and a friend, Linda Fitzgerald, were at the home of Fitzgerald's relative, Linda Motter, to help remove a "large, dangerous dog" in Motter's care.  (Compl. ¶ 8, ECF No. 1.)  The dog had bitten Plaintiff on a prior occasion and been "quarantined" by local officials.  (*Id.* ¶ 10.)  Fitzgerald called 911 to report that the dog was dangerous and required removal.  While waiting for an officer to arrive, Fitzgerald and Steeb sat "in the safety of Steeb's automobile," which was parked in Motter's driveway.  (*Id.* ¶ 13.)

Sometime later, Ehart arrived with an animal control truck, which was a modified pickup truck with a "containment area" in the rear.  (*Id.* ¶ 17.)  Ehart was "personally aware of the dog's violent history and how difficult it was to control" because he had delivered the dog back to Motter after the last quarantine period.  (*Id.* ¶¶ 18-19.)  By this time, the dog was standing next to Motter in the doorway of her home.  The dog apparently reacted to Ehart and the presence of the truck. (*Id.* ¶ 27.)  Ehart asked Fitzgerald to help by removing the dog from the house and putting it into the containment area while Ehart waited inside the cab of the truck.  Fitzgerald agreed to do so despite her own safety concerns about this plan.

As Fitzgerald brought the dog to the rear of the truck, it attacked her, knocking her to the ground and biting her.  Ehart did not see the attack, but Plaintiff did.  Plaintiff got out of his vehicle to rescue Fitzgerald.  Plaintiff struck the dog with a wooden axe handle to stop its attack on Fitzgerald.  As a result, the dog turned on Plaintiff, knocking him to the ground near the passenger side window of the control truck and then repeatedly biting his leg.

Seeing the attack on Plaintiff, Ehart got out of the truck to help but the only implement at his disposal was an animal control loop, which was not helpful.  He could not put it over the dog's head because Plaintiff's leg was locked in the dog's jaws.  Plaintiff asked Ehart to kill the dog, but Ehart could not do so because he did not possess a firearm.  He had repeatedly asked the City's police department to issue him a firearm and it denied those requests.  The City and Blocker were allegedly aware of those requests.

At Plaintiff's urging, Ehart called for backup.  Eventually, another officer arrived and freed Plaintiff by shooting and killing the dog.  Plaintiff alleges that he suffered significant injuries to his leg and underwent multiple surgeries to repair damage caused by the dog attack.

In Count I of his complaint, Plaintiff claims that Officer Ehart is liable under § 1983 for violating Plaintiff's rights under the Fourth and Fourteenth Amendments by putting Plaintiff and Fitzgerald at risk of an attack.

In Count II, Plaintiff claims that the City is liable under § 1983 because they failed to adequately train, supervise, and equip Ehart.

In Count III, Plaintiff claims that Ehart's actions violated Plaintiff's rights under the Michigan Constitution.

In Count IV, Plaintiff claims that the City is liable for the "state constitutional torts" of Ehart and the other individual defendants.  (Compl. ¶ 116.)

In Count V, Plaintiff claims that Ehart was grossly negligent.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility

3

of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Qualified Immunity

Defendant Ehart argues that he is entitled to qualified immunity. An officer is entitled to qualified immunity and is shielded from damages and the burdens of suit "if his conduct does not violate a clearly established statutory or constitutional right of which a reasonable official would have known." *Smith v. City of Troy*, 874 F.3d 938, 943 (6th Cir. 2017) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Determining an officer's entitlement to qualified immunity thus "involves a two-step inquiry." *Smith*, 874 F.3d at 944. First, the Court must determine whether the facts alleged, judged in a light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right. *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If no constitutional right would have been violated on the facts alleged, the inquiry stops at that point and the officer is entitled to qualified immunity." *Id*.

Second, "[i]f a violation can be made out . . . the court must determine whether the right at stake was clearly established." *Id*. "In making this determination, the court must rely on decisions from the United States Supreme Court, the Sixth Circuit Court of Appeals, or finally, the decisions of other circuit courts." *Id*. (citing *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993)). "Although 'a case directly on point' is not necessary to overcome qualified immunity, 'existing precedent must have placed the . . . constitutional question beyond debate.'" *Linden v. City of Southfield*, 75 F.4th 597, 602 (6th Cir. 2023) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "If either prong [of the test for qualified immunity] is not met, then the government officer is entitled to qualified immunity." *Doe v. Miami Univ*., 882 F.3d 579, 604 (6th Cir. 2018).

4

The Court can consider the two prongs in any order.  *Gambrel v. Knox Cnty.*, 25 F.4th 391, 401 (6th Cir. 2022).

Once the defense of qualified immunity is raised, the "plaintiff bears the burden of overcoming qualified immunity."  *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021).  That burden includes "pointing to legal authority that clearly shows that the constitutional question . . . should be resolved in [the plaintiff's] favor."  *Linden*, 75 F.4th at 604.

### III. ANALYSIS

#### A. Count I: State-Created Danger

Plaintiff's first claim asserts a constitutional violation under a theory of state-created danger.  "[T]he state-created danger doctrine applies when the state affirmatively acts in a way that either creates or increases a 'risk that an individual will be exposed to private acts of violence.'"  *Lipman v. Budish*, 974 F.3d 726, 744 (6th Cir. 2020) (quoting *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)).  Defendants argue that Plaintiff fails to state such a claim.

> At the motion to dismiss stage, a plaintiff must allege the following three elements to show a violation of substantive due process under the state-created danger theory: (1) "an affirmative act that creates or increases the risk," (2) "a special danger to the victim as distinguished from the public at large," and (3) "the requisite degree of state culpability."

*Smith v. City of Detroit*, No. 23-1448, 2024 WL 1931496, at *2 (6th Cir. May 2, 2024) (quoting *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 464 (6th Cir. 2006)).  "The third prong has been described by some . . . cases as the requirement that '[t]he state must have known or clearly should have known that its actions specifically endangered an individual.'"  *Id.* at *2 n.1 (quoting *McQueen*, 433 F.3d at 469).  But the Court of Appeals has "since clarified that this knowledge requirement is synonymous with the level of culpability required to establish a substantive due process violation," i.e., conduct that is "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833,

847 n.8 (1998)).  Put another way, the official "must 'be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"

*Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 933 (6th Cir. 2020) (quoting *Ewolski*

*v. City of Brunswick*, 287 F.3d 492, 513 (6th Cir. 2002)).  And after drawing that inference, the

official must "act or fail to act in a manner demonstrating reckless or callous indifference toward

the individual's rights."  *Id.* (quoting *Ewolski*, 287 F.3d at 513 (quotation marks omitted)).  Thus,

awareness of a substantial risk of serious harm is not enough; the official's response to that risk of

harm must shock the conscience.  *Id.* at 934.

Plaintiff's allegations fall short of satisfying the elements necessary for his claim.  First, he

alleges no facts from which to infer an affirmative act by Ehart that increased Plaintiff's risk of

exposure to harm by a third party.  Assuming for the sake of argument that the dog attack is harm

by a third party, Ehart did nothing to increase Plaintiff's risk of harm.  Plaintiff was safely inside

a vehicle when Ehart asked Fitzgerald for assistance with the dog, and when the dog started

attacking Fitzgerald, Plaintiff chose to leave that place of safety in order to assist Fitzgerald.  Ehart

played no role in Plaintiff's decision.

For similar reasons, Plaintiff has not alleged conscience-shocking behavior by Ehart.  He

has not alleged acts by Ehart that exhibited a reckless or callous disregard to a risk that Plaintiff

would be harmed.  Again, Plaintiff was not at risk until he decided to intervene by stepping out of

his vehicle to assist Fitzgerald.

Plaintiff argues that danger invites rescue and that because Ehart was aware of a substantial

risk of harm that the dog would attack Fitzgerald, he should have reasonably foreseen that Plaintiff

would attempt to aid Fitzgerald in a manner that put himself at risk, and that the dog would then

attack Plaintiff.  The Court is not persuaded that Plaintiff's attempt to rescue Fitzgerald was

reasonably foreseeable.   At any rate, reasonable foreseeability of harm to Plaintiff is not the appropriate test.  Instead, to show that Ehart violated Plaintiff's constitutional rights, Plaintiff must show that Ehart was aware of a *substantial risk* of serious harm *to Plaintiff* and then responded to that risk in a manner that shocks the conscience.  Because Plaintiff was not in any danger when Ehart asked Fitzgerald to assist with the dog, and because Ehart did nothing to increase Plaintiff's risk or encourage Plaintiff's intervention, Plaintiff does not state a claim.  He has failed to plead facts from which to infer that Ehart was aware of a substantial risk of harm *to Plaintiff*, let alone that Ehart acted toward Plaintiff in a manner that shocks the conscience.   Awareness of a substantial risk that the dog would attack Fitzgerald does not equate to awareness of a substantial risk that Plaintiff would decide to intervene in a manner that put his own safety in jeopardy.

Plaintiff relies upon several cases that are not binding or persuasive.  In *Pagan v. Rivera*, No. 19-7176 (KM) (ESK), 2020 WL 2060274 (D.N.J. Apr. 29, 2020), the plaintiffs (a mother and daughter) requested assistance from the police to remove a dangerous individual (the mother's abusive former boyfriend) from the mother's home.  *Id.* at *1.  The officer instructed the mother to enter the home to retrieve her identification, but the mother initially refused to do so out of fear that she would be attacked.  *Id.* at *2.  After she relented and entered her home, her boyfriend attacked her.  *Id.*  From outside the home, the daughter heard her mother's screams and asked the officer to assist.  He would not do so, so the daughter entered the home and then the boyfriend attacked her as well.  *Id.*  The court permitted both plaintiffs to proceed with claims against the officer under the state-created danger theory.  As to the daughter, the court found that her claim presented "a closer case" than the mother's claim, but that the officer was deliberately indifferent to a risk of harm to the daughter by "forc[ing] [the daughter] into the role of rescuer" because the officer did not act to protect the mother.  *Id.* at *7-8.

The Court is not persuaded by the logic in *Pagan*.  That court treated the officer's failure to protect the mother as an affirmative act creating danger for the daughter, who was in no danger until she took matters into her own hands.  But "a failure to act is not an affirmative act under the state-created danger theory." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).  Likewise, Ehart did not affirmatively increase Plaintiff's risk of danger.  Plaintiff was not in danger until he decided to exit his vehicle and rescue Fitzgerald.  Ehart did not "force" Plaintiff into that decision and is not responsible for it.

Plaintiff also cites *Huber v. Beth*, 654 F. Supp. 3d 777 (E.D. Wis. 2023), in which the police decided to "funnel" protestors out of a park into an area where the officers knew there were armed individuals who were hostile toward the protestors.  *Id.* at 787.  A protestor encountered one of these armed individuals and attempted to disarm him in order to prevent him from harming others.  In response, the armed individual shot and killed the protestor.  *Id.*  The protestor's estate brought a due process claim against the officers under a theory of state-created danger.  The court allowed the claim to proceed, rejecting the defendants' argument that the protestor's decision to intervene was the dangerous situation causing his death.  *Id.* at 792.  "Having forced the protestors and armed individuals together, blocked means of escape, and withdrawn police protection, the defendants left the protestors no choice but to try and defend themselves"; thus, forcing the protestors into a dangerous area with no protection or means of escape was the affirmative act proximately causing death.  *Id.*  That case is distinguishable because Ehart did not increase Plaintiff's risk of harm or leave him with no choice but to defend Fitzgerald.  Plaintiff could have remained safe in the vehicle or found another means to assist Fitzgerald without putting himself at risk.  For instance, he could have called 911 and asked for emergency assistance.

8

In summary, Plaintiff fails to state a due process claim against Ehart.  But even if Plaintiff had stated a claim, Ehart would be entitled to qualified immunity because Plaintiff has failed to meet his burden of showing that the law covering these circumstances was clearly established. Plaintiff himself acknowledges that he cannot find a case "dealing directly" with the facts at hand. (Pl.'s Resp. Br. 20, ECF No. 35.)  And he does not identify any binding precedent that is remotely similar to this case.

In passing, Plaintiff asks the Court for the opportunity to amend his complaint if his allegations do not suffice to state a claim.  But he offers no additional facts that would save his claim from dismissal.  Moreover, the Court's local rules require a party to file a proposed amended pleading where, as here, an amendment to that pleading requires leave of the Court.  *See* W.D. Mich. LCivR 5.7(f).  Plaintiff has not filed a proper motion to amend the complaint or a proposed amended complaint.  Accordingly, the Court will dismiss Count I for failure to state a claim.

### B. Count II: *Monell* Liability

Plaintiff sues the City for allegedly failing to train and supervise Ehart.  A municipal entity like the City is liable under § 1983 only if its policy or custom caused the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To state a claim against the City under *Monell*, Plaintiff must sufficiently plead an underlying constitutional violation.  *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.").  Because Plaintiff has not adequately alleged such a violation, he does not state a § 1983 claim against the City. Consequently, the Court will dismiss Count II.

### C. Counts III-V:  State Law Claims

Plaintiff's remaining claims arise under state law.  The Court has supplemental jurisdiction over these claims.  Because the Court will dismiss Plaintiff's federal claims, the Court must decide

whether to exercise supplemental jurisdiction over Plaintiff's claims arising under state law. Ordinarily, where the federal claims are dismissed prior to trial, the Court will dismiss the remaining state law claims.  *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."  *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotation marks omitted).  Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the interests of judicial economy and avoiding multiplicity of litigation do not outweigh needlessly deciding state law issues.  Accordingly, the Court will dismiss Plaintiff's remaining claims without prejudice.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motions to dismiss as to the federal claims.  The Court will dismiss the remaining claims because the Court declines to exercise supplemental jurisdiction over them.

The Court will enter an order and judgment consistent with this Opinion.


Dated: September 23, 2024                    /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             CHIEF UNITED STATES DISTRICT JUDGE